UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| DESOTO HOSPITAL ASSOCIATION | CIVIL ACTION NO. 08-cv-0623 |
| VERSUS | JUDGE HICKS |
| CARDINAL HEALTH 109, INC., ET AL. | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

DeSoto Hospital Association d/b/a DeSoto Regional Health System ("DeSoto") filed suit in state court against Cardinal Health 109, Inc., Cardinal Health, Inc. and Ernest Russo ("Russo") seeking damages and other relief arising out of certain Pharmacy Agreements between DeSoto and Cardinal (and Cardinal's predecessor-in-interest). As a result of an Amending Petition (Doc. 1-2), Cardinal Health 303, Inc. ("Cardinal") was substituted for the other Cardinal defendants.

Cardinal filed a Notice of Removal arguing that Russo was improperly joined to defeat diversity jurisdiction. Before the Court is Plaintiff's **Motion to Remand**, or in the alternative, For Leave to File Second Amended Petition for Damages (Doc. 12). Plaintiff argues that Russo – Cardinal's on-site pharmacist at DeSoto – was properly joined. Plaintiff also argues that Defendant's removal was untimely. To resolve the motion, a careful review of Plaintiff's allegations is necessary.

**Allegations**

The Petition alleges that, under the Pharmacy Agreements, Cardinal agreed to provide pharmacy management services, including pharmaceutical drugs, to DeSoto based on a fee schedule. Petition, para. 4. DeSoto alleges that Cardinal engaged in systematic and continuous fraud and continuously breached the Pharmacy Agreements. According to the Petition, Cardinal hired Russo as a pharmacist to work at DeSoto.

Except for Paragraphs 24-30 at the end of the DeSoto's Petition, the Petition is divided into 9 headings, each of which purports to set forth a separate cause of action against Cardinal. Virtually all of the substantive allegations are made "upon information and belief." Count I [Improper Charges for Non-Drugs] alleges that Cardinal improperly billed DeSoto for items that were excluded from the meaning of "drugs" in the Pharmacy Agreements. The Petition alleges that these actions resulted in Cardinal "realizing profit from its own fraud at great expense and detriment to DeSoto Hospital."

Count II [Consumer Price Index] alleges that Cardinal increased its Minimum Fees by an amount far in excess of the Consumer Price Index factor allowed in the Pharmacy Agreements. The Petition states: "Again, as a result of this fraud, which was to the detriment and great expense of DeSoto Hospital, Cardinal has realized substantial profit."

Count III [Fraudulent Outlier Charges] alleges that Cardinal "continuously and knowingly overcharged DeSoto Hospital for outlier admissions by far exceeding the agreed-upon ten percent (10%) threshold, causing substantial expense to DeSoto Hospital."

Count IV [Improper Tax Exclusions] alleges that Cardinal "continuously and knowingly" charged sales tax on items that were not defined as "Drugs" under the Pharmacy Agreements and that Cardinal failed to deduct certain Medicare drug sales from the calculation of taxes.

Count V [Unit Dose Violations] alleges that "Cardinal continuously and knowingly ignored the pricing terms set out by the Agreement in favor of its own inflated pricing terms resulting in substantial and fraudulent overcharges."

Count VI [340b Program Violations] alleges that Cardinal delayed enrolling DeSoto in the Medicare 340b Program and failed to set up a wholesale account. DeSoto alleges that these omissions caused it to incur substantial added expense and loss of production.

Count VII [Illegal Substitutions] alleges that Cardinal engaged in persistent and knowing violations of La. R.S. 14:70.1 [Medicaid Fraud] and 15 U.S.C. Section 1125 [Lanham Act] by persistently and knowingly dispensing generic drugs while charging DeSoto brand-name drug prices. The Petition alleges that this "fraud" caused substantial monetary damages and loss of income to DeSoto.

Count VIII [Fraudulent Charges for Items/Drugs Not Dispensed] alleges that Cardinal failed to give DeSoto credit for drugs that were prescribed but never dispensed. It also alleges that Cardinal charged for more drugs than it actually dispensed.

Count IX [Unfair Trade Practices and Consumer Protection Law] alleges that "the fraudulent actions of Cardinal and Russo in overcharging DeSoto for items not included in

the definition of 'Drugs' amount to a violation of the Louisiana Unfair Trade Practices and Consumer Protection Law." DeSoto alleges it suffered an ascertainable loss of money as a result of "Cardinal's use of an unfair and deceptive practice in the conduct of Cardinal and DeSoto Hospital's commercial agreement."

The remainder of the Petition lacks count or subject matter headings, and the absence of headings has led to additional arguments between the parties and a request by DeSoto to amend to insert headings. An amendment is not necessary, as the court is capable of understanding the Petition as currently constituted.

Paragraph 24 alleges fraud, breach of contract, and violations of state and federal laws. Paragraph 25 alleges that Russo actively participated in all fraudulent activity by Cardinal and that he knew and understood that his actions and those of Cardinal were fraudulent and blatant breaches of the Pharmacy Agreements. That paragraph also alleges that Russo was "instructed and trained" to perpetrate these frauds on DeSoto.

Paragraph 26 alleges that DeSoto attempted to mitigate its damages. Paragraph 27 alleges that DeSoto suffered tremendous loss of revenue and substantial damages as a result of the "aforementioned fraudulent acts and breaches of contract."

Paragraph 28 states: "The allegations of the foregoing paragraphs are incorporated herein by reference." Paragraph 29 asserts a claim for indemnification. Paragraph 30 seeks a declaratory judgment.

**Improper Joinder**

Congress has provided a statutory framework for removal of certain cases where there is diversity of citizenship. Those statutes have been interpreted by the courts to require complete diversity; jurisdiction is lacking if any defendant is a citizen of the same state as any plaintiff. That strict requirement would, on its face, permit a plaintiff to name as a defendant any citizen of his home state and defeat removal. To prevent such shams, the "judge-imported concept of fraudulent joinder" has developed. Bobby Jones Garden Apartments, Inc. v. Suleski, 391 F.2d 172, 176 (5th Cir. 1968). The Fifth Circuit has adopted the term "improper joinder" to describe the doctrine, though it took care to note that there is no substantive difference between the two terms. Smallwood v. Illinois Central R.R. Co., 385 F.3d 568 n. 1 (5th Cir. 2004) (en banc).

There are two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. Only the second way is at issue in this case. That second test asks whether the defendant has demonstrated there is no reasonable basis for the district court to predict the plaintiff might be able to recover against the in-state defendant. Smallwood, 385 F.3d at 573; Travis v. Irby, 326 F.3d 644, 646-47 (5th Cir. 2003).

The "no reasonable basis" contest may take place in two different settings. In the first, the defendant challenges the adequacy of the plaintiff's pleadings, without the submission of evidence. The court conducts a Rule 12(b)(6)-type analysis to determine whether the

complaint states a claim under state law against the in-state defendant. Smallwood, 385 F.3d at 573. Any ambiguities in state law must be resolved in favor of the plaintiff. Gray v. Beverly Enterprises-Mississippi, Inc., 390 F.3d 400, 405 (5th Cir. 2004).

But merely pleading a valid state law claim, or one whose validity is reasonably arguable, against the resident defendant does not necessarily mean that the joinder of the resident defendant is proper. The second setting for the "no reasonable basis" contest permits the defendant to challenge the plaintiff's allegations and attempt to demonstrate by summary judgment-type evidence that the plaintiff is unable to prove all of the facts necessary to prevail. The court has discretion in those circumstance to pierce the pleadings and analyze the improper joinder claim based on that evidence. Hornbuckle v. State Farm Lloyds, 385 F.3d 538, 542 (5th Cir. 2004). However, disputed questions of fact should be resolved in favor of the plaintiff. Burden v. General Dynamics, 60 F.3d 213, 217 (5th Cir. 1995).

**Analysis**

Cardinal attacks both the fraud claim and the Louisiana Unfair Trade Practices Act ("LUTPA") claim against Russo. The viability of the LUTPA claim is doubtful, particularly if the case were to remain in federal court. See Orthopedic & Sports Injury Clinic v. Wang Laboratories, 922 F.2d 220 (5th Cir. 1991). However, the court need not resolve the LUTPA issue because the allegations of Plaintiff's pleadings show there is a reasonable basis to predict that DeSoto might be able to recover against the Russo in state court for fraud.

Fraud, along with matters such as error or duress, is a vice of consent defined in La. Civ. Code art. 1953. That Article provides: "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction."

It does not appear that DeSoto is asserting a vice of consent to a contract. Rather, it appears from the allegations in the Petition that DeSoto is pursuing a claim of delictual fraud under La. Civ. Code Art. 2315. The elements of delictual fraud are: "(1) a misrepresentation of a material fact, (2) made with the intent to deceive, and (3) causing justifiable reliance with resulting injury." A claimant need not prove the existence of a contract to recover under this tort theory. Guidry v. U. S. Tobacco Co., Inc., 188 F.3d 619, 626-27 (5th Cir. 1999).

It is not necessary for a plaintiff to plead each element of a claim. General Electric Capital Corp. v. Posey, 415 F.3d 391, 396 (5th Cir. 2005). The pleading need only make it possible for an inference to be drawn that the elements exist. Walker v. South Central Bell Telephone Co., 904 F.2d 275, 277 (5th Cir. 1990). When fraud is alleged, however, Federal Rule of Civil Procedure 9(b) imposes a greater standard. "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Id. "What constitutes 'particularity' will necessarily differ with the facts of each case." Benchmark Electronics, Inc. v. J. M. Huber Corp., 343 F.3d 719, 724 (5th Cir. 2003), quoting Guidry v. Bank of LaPlace, 954 F.2d 278, 288 (5th Cir. 1992). The difference from case to case stems from the fact that fraud may arise by statements, actions or omissions, and the

allegations required with respect to each of those varieties of fraudulent conduct are different. But, no matter the circumstances, the essence of Rule 9(b) is a requirement that the "who, what, when, where and how" of the alleged fraud be laid out. Benchmark Electronics, Inc., 343 F.3d at 724. Louisiana law, under which the Petition was drafted, includes a similar requirement. La. C.C.P. art. 856.

The Petition contains numerous allegations of fraud and breach of contract by Cardinal, and Paragraph 25 alleges that Russo was an active participant in Cardinal's fraud. Cardinal's fraud is alleged with sufficient particularity (charging for non-drugs; using an inflated CPI; fraudulent outlier admission charges; unit dose violations; illegal substitutions; and fraudulent charges for drugs not dispensed). DeSoto then alleges that Russo – whose affidavit establishes that he was the Director of Pharmacy at DeSoto and responsible for inputting data from orders written by attending physicians – was an active participant in those frauds and that he knew and understood that his actions were fraudulent.

Russo testifies in his affidavit that he did not exercise any discretion in the pricing applied to the items ordered by the physicians. However, based on the allegations of DeSoto's Petition, it is possible that a state court could still impose liability on Russo for his alleged involvement in illegal substitutions (Count VII) and fraudulent charges for drugs not dispensed (Count VIII). Russo admits in his affidavit that he was the person responsible for collecting and uploading information regarding the items dispensed. See Boisdore v. Bridgeman, 502 So. 2d 1149, 1151 (La. App. 4th Cir. 1987)(lawyer's secretary found liable

for fraud because she assisted lawyer in the fraud, acted as a conduit for his manipulations, and participated in his activities). That Russo was an employee of Cardinal does not insulate him from his own fraudulent actions. A corporate officer or employee is responsible for his own fraudulent acts. Unimobile 84 v. Spurney, 797 F.2d 214, 217 (5th Cir. 1986).

**Conclusion**

The elements of delictual fraud under Louisiana law are difficult to discern and even more difficult to apply. Based on the allegations of the Petition and the Affidavit of Russo, the undersigned concludes that there is a reasonable basis to predict that DeSoto might be able to recover against Russo in state court for fraud. Reasonable minds could perhaps disagree as to whether DeSoto has established a viable basis for a claim of fraud against Russo. But that room for debate itself compels a finding that Russo was not improperly joined, because all ambiguities in state law and all disputed questions of fact must be resolved in favor of DeSoto. Gray, 390 F.3d at 405; Burden, 60 F.3d at 217. Cardinal did not satisfy its heavy burden of showing that Russo was improperly joined. Green v. Amerada Hess, 707 F.2d 201, 205 (5th Cir. 1983). That conclusion makes it unnecessary to address the timeliness and other arguments of the parties.

Accordingly;

**IT IS RECOMMENDED** that the Motion to Remand (Doc. 12) be **granted** and the case be **remanded** to the 11th Judicial District Court, DeSoto Parish, Louisiana.

**IT IS FURTHER RECOMMENDED** that Plaintiff's alternative request to amend

be **denied as moot**.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 29th day of July, 2008.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE